**UNITED STATES of America,
Appellee,**

v.

**GRANITE STATE PACKING COM-
PANY, Defendant, Appellant.**

**No. 72–1253.**

United States Court of Appeals,
First Circuit.

Argued Oct. 2, 1972.

Decided Nov. 6, 1972.

James E. Higgins, Manchester, N. H., with whom Sheehan, Phinney, Bass & Green, and Richard A. Morse, Manchester, N. H., were on brief, for defendant-appellant.

William B. Cullimore, U. S. Atty., for appellee.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

ALDRICH, Senior Judge.

Defendant, operating a slaughtering plant in the City of Manchester, New Hampshire (City), appeals from a conviction on three counts for violating section 13 of the Rivers and Harbors Act of 1899, 33 U.S.C. § 407, also known as the Refuse Act of 1899, in that it did "discharge, or deposit, or cause, suffer, or procure to be thrown, discharged, or deposited . . . refuse matter . . . other than that flowing from streets and sewers and passing therefrom in a liquid state, into any navigable water of the United States. . . ." United States v. Granite State Packing Co., D.N.H., 1972, 343 F.Supp. 57. In this court defendant does not dispute the district court's finding that the Merrimack River, hereinafter river, is navigable in the jurisdictional sense. United States v. Appalachian Power Co., 1940, 311 U.S. 377, 404–410, 61 S.Ct. 291, 85 L.Ed. 243; Rochester Gas & Elec. Corp. v. Federal Power Commission, 2

Cir., 1965, 344 F.2d 594, or that its animal waste is not exempted sewerage, United States v. Republic Steel Corp., 1960, 362 U.S. 482, 80 S.Ct. 884, 4 L.Ed. 2d 903; United States v. Pennsylvania Indus. Chem. Corp., W.D.Pa., 1971, 329 F.Supp. 1118, rev'd on other grounds, 3 Cir., 1972, 461 F.2d 468. It advances various defenses based upon the fact that it discharged its refuse into the sewerage system of the City.

The facts are these. Sometime prior to 1885 a railroad, laid out between defendant's plant and the river, constructed a stone culvert under its right of way to carry discharges by defendant's predecessor in occupation. In 1885 the City connected a sewer to the culvert, part way between defendant's plant and the railroad track. Since then defendant's and the City's effluents, mingled at the point of juncture, jointly pass under the track and into the river. No exercise of eminent domain, deeds, or other documents support any part of this procedure, but it would seem reasonably apparent that by this time both defendant and the City have an easement of flow as against the railroad. Whether defendant has enforceable rights against the City need not be considered. The court found, stretching the facts, perhaps, in defendant's favor, that since the culvert "is part of the municipal sanitary and storm sewer system" of the City, "defendant discharges into a public sewer." Although it might be said, instead, that the public sewer discharges into defendant's culvert, we accept this finding for present purposes. The court concluded, however, that even though defendant discharged its refuse into a municipal sewer system, its contention that this freed it of liability did not follow. We agree.

There is nothing in the statute that supports defendant's position. As a matter of simple logic, if a party deposits an impermissible substance in a municipal sewer, knowing that the sewer leads directly into navigable water, it "causes, suffers, or procures" the substance to be discharged into the stream. *Cf.* Nowlin v. United States, 10 Cir., 1964, 328 F.2d 262. Moreover, it seems clear that the statute is not restricted to direct deposits, United States v. Esso Standard Oil Co. of Puerto Rico, 3 Cir., 1967, 375 F.2d 621, or, at least within limits, to *scienter*. United States v. United States Steel Corp., N.D.Ind., 1970, 328 F.Supp. 354, 356.

Nor is defendant aided by the fact that a subsequent portion of the statute empowers the Secretary of the Army to grant exceptions from the broad prohibition. Under the authority of the Refuse Act and Executive Order No. 11574, the Secretary has established a comprehensive permit program. 33 C.F.R. § 209.131 (1971). Even if, which we need not consider, defendant could readily have obtained a permit, this would be no defense; the statute makes the receipt of a permit a condition precedent. While the regulation might be said to modify this requirement where a party "[d]ischarges or deposits into a municipal or other public sewage *treatment* system," 33 C.F.R. § 209.131(d) (2)(ii), (emphasis added), the City passes its sewage raw; there is no treatment. United States v. City of Asbury Park, D. N.J., 1972, 340 F.Supp. 555. Defendant's argument that the City is planning to have a treatment system does not even warrant the description "specious."

Equally without merit is defendant's claim that if, on the other hand, it could not get a permit, it is either contrary to the intent of Congress, or unconstitutional, to apply the statute to it. The statute does not purport to provide for permits as of right. Basically, it forbids certain conduct, with exceptions. Defendant has not shown that the exceptions are arbitrary, unreasonable, or discriminatory. We see nothing more to the case.

Affirmed.