**UNITED STATES of America**

v.

**AMERICAN CYANAMID COMPANY,**
**Defendant.**

**No. 72 Cr. 1015.**

United States District Court,
S. D. New York.

Feb. 15, 1973.

Whitney North Seymour, Jr., U. S. Atty., for the United States by Anne Sidamon-Eristoff, New York City, of counsel.

Ronald J. Cracas, Edward F. Malone, New York City, for defendant.

GURFEIN, District Judge.

The Grand Jury indicted the American Cyanamid Company ("American") for unlawfully throwing, discharging and depositing (and causing these acts to be done) from a plant known as the Standard Coated Products Department in Buchanan, refuse matter consisting of titanium dioxide, calcium carbonate and other suspended and dissolved solids into Dickey Brook, a tributary of the Hudson River, which is part of the navigable waters of the United States, and it is alleged that said refuse matter floated and was washed into said navigable waters of the United States.

The crime charged is defined in 33 U.S.C. §§ 407, 411 (Act of March 3, 1899, c. 425, § 13, § 16).

Section 13 of the 1899 Act (33 U.S.C. § 407) provides in pertinent part:

"It shall not be lawful to throw, discharge, or deposit, or cause, suffer, or procure to be thrown, discharged, or deposited either from or out of any ship, barge, or other floating craft of any kind, or from the shore, wharf, manufacturing establishment, or mill of any kind, any refuse matter of any

kind or description whatever other than that flowing from streets and sewers and passing therefrom in liquid state, into any navigable water of the United States, or into any tributary of any navigable water from which the same shall float or 'be washed into such navigable water."

The case was tried to the Court, a jury having been waived.

The Government contends that the defendant is guilty on two alternate grounds: (1) as the indictment charges, the refuse was discharged into Dickey Brook, a tributary of the Hudson River and floated into the Hudson River; or (2) even if the refuse did not actually float into the Hudson River, the discharge into Dickey Brook was unlawful because Dickey Brook is itself part of the navigable waters of the United States.

The evidence established that the plant involved had a reserve tank which contained titanium dioxide and other substances, that some employee negligently failed to close a water tap just before the weekend of August 12, 1972, and that the tank overflowed during the weekend. It also appeared that someone had neglected to cover up the drain in the floor so that the spillage from the tank flowed through the drain into a discharge pipe which emptied into Dickey Brook. The accident was discovered on Monday morning when it was too late.

The Government's contention that Dickey Brook is itself a part of the "navigable waters of the United States" under Section 407 is not tenable.

■ The Supreme Court held early in the Daniel Ball, 10 Wall. (U.S.) 557, 563, 19 L.Ed. 999 (1870) that for a body of water to be "navigable" it must be navigable in fact. The old English doctrine that navigability was dependent on whether there was tidal flow was reject-

ed. And this is the modern view as well. See United States v. Appalachian Power Co., 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243 (1940); United States v. Holt State Bank, 270 U.S. 49, 56, 46 S.Ct. 197, 70 L.Ed. 465 (1926). Conversely, the fact that the tide ebbs and flows in a stream does not necessarily tend to demonstrate its navigable character. Mintzer v. North American Dredging Co., 242 F. 553, 559–61 (N.D.Cal.1916), aff'd, 245 F. 297 (9 Cir. 1917); Chisholm v. Caines, 67 F. 285, 292 (D.S.C. 1894); Van Cortlandt v. New York Central Railroad Co., 139 Misc. 892, 897, 250 N.Y.S. 298, 304–05 (Sup.Ct.West.Co. 1931).[1] See also Iowa-Wisconsin Bridge Co. v. United States, 84 F.Supp. 852, 114 Ct.Cl. 464 (1949), cert. denied, 339 U.S. 982, 70 S.Ct. 1020, 94 L.Ed. 1386 (1950); Pitship Duck Club v. Town of Sequim, 315 F.Supp. 309 (W.D.Wash. 1970).

The Government can cite only a recent decision by Judge Lasker in this Court as purportedly supporting its contention. See United States v. Baker, 2 E.R.C. 1849 (S.D.N.Y.1971). But that case did not involve refuse in the context of Section 13 of the 1899 Act. It involved obstruction by filling in under Section 10 of that Act (33 U.S.C. § 403). The water involved was a marsh adjacent to the Hudson River. It was an estuary, not a separate tributary.

■ Dickey Brook, on the other hand, is a separate brook that flows into Lent Cove which is part of the Hudson. It is not navigable and the fact that it may be subject to tidal ebb and flow does not make it "[a] navigable water of the United States."

It is, however, as the indictment states "[a] tributary of [a] navigable water."

The issue is, therefore, whether the offense requires that refuse actually shall have floated into the Hudson River

---

1. The Supreme Court decision was reversed on other grounds in 238 App.Div. 132, 263 N.Y.S. 842. The Court of Appeals in turn reversed the Appellate Division and reinstated the Supreme Court's decision in 265 N.Y. 249, 192 N.E. 401.

or whether the words of the statute that "the same shall float or be washed into such navigable water" involves merely a likelihood that the refuse discharged in a tributary will find its way to the river.

■ Although no precedent has been cited to the point, I think that the statute must be read broadly to protect the public interest: "The philosophy of . . . Mr. Justice Holmes in New Jersey v. New York, 283 U.S. 336, 342 [51 S.Ct. 478, 75 L.Ed. 1104] that 'A river is more than an amenity, it is a treasure,' forbids a narrow, cramped reading either of § 13 or of § 10." United States v. Republic Steel Corp., 362 U.S. 482, 491, 80 S.Ct. 884, 890, 4 L.Ed.2d 903 (1960).

The important consideration is the relationship of the tributary to the navigable water. Is it so situate that an ebb tide and the downstream current will be likely to wash refuse down to the river? There is ample evidence to support the view that there is an ebb and flow of tidal waters of the Hudson as far as the discharge pipe in the lower reaches of Dickey Brook. And there is some evidence that the particular discharge actually reached Lent Cove. I cannot find, however, that the Government has proved beyond a reasonable doubt that the particular discharge actually reached Lent Cove.

■ The Government has proved beyond a reasonable doubt, however, that Dickey Brook is a tributary from which discharged refuse will float or be washed into a navigable water. It is on the basis of that interpretation of the statute that I find the defendant guilty.

## FINDINGS OF FACT

My findings are that:

1. Refuse was discharged by the defendant into Dickey Brook from August 12 through August 14, 1972.

2. The discharge of refuse was unintentional but probably could have been prevented by an appropriate alarm device calling attention to the overflowing of the tank.

3. The discharge of refuse was extensive enough so it would be likely to be washed into the navigable water.

4. Dickey Brook is itself not a navigable water.

5. The Government has failed to establish beyond a reasonable doubt that the particular refuse discharged on August 12–14, 1972 actually was washed into navigable water.

■ 6. There is insufficient evidence for the defendant to invoke the immunity for reporting "oil spills" under 33 U.S.C. § 1161(b)(4).

## CONCLUSIONS OF LAW

1. Dickey Brook is not a navigable water.

2. Dickey Brook is a tributary of a navigable water.

■ 3. Obstruction to navigation is not an essential element for a violation of 33 U.S.C. § 407. See United States v. Standard Oil Co., 384 U.S. 224, 86 S.Ct. 1427, 16 L.Ed.2d 492 (1966); United States v. Pennsylvania Industrial Chemical Corp., 461 F.2d 468, 471 (3 Cir. 1972), cert. granted, 409 U.S. 1074, 93 S. Ct. 689, 34 L.Ed.2d 662 (1972); United States v. Maplewood Poultry Co., 327 F. Supp. 686, 688 (N.D.Me.1971).

■ 4. Scienter is not required. The offense charged is *malum prohibitum*. See United States v. Ballard Oil Co. of Hartford, 195 F.2d 369 (2 Cir. 1952).

■ 5. The non-existence of a permit program by the Corps of Engineers is irrelevant because the discharges involved were accidental, and no permit would have been sought in any event. *Cf.* United States v. Granite State Packing Co., 343 F.Supp. 57 (D.N.H.1972), aff'd, 470 F.2d 303 (1 Cir. 1972); United States v. Pennsylvania Industrial Chemical Corp., *supra*, 461 F.2d at 473.

6. The prosecution has proved beyond a reasonable doubt that the defendant is guilty of violating 33 U.S.C. §§ 407, 411.

7. The verdict is guilty.