**UNITED STATES of America,**
**Appellee,**

v.

**AMERICAN CYANAMID COMPANY,**
**Defendant-Appellant.**

**No. 951, Docket 73–1458.**

United States Court of Appeals,
Second Circuit.

Argued June 11, 1973.
Decided June 27, 1973.

Ronald J. Cracas, New York City (Edward F. Malone, New York City, on the brief), for defendant-appellant.

Anne S. Eristoff, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty., S. D. N. Y., and Daniel Riesel and John W. Nields, Jr., Asst. U. S. Attys., on the brief), for appellee.

Before KAUFMAN, Chief Judge, SMITH, Circuit Judge, and BRYAN, District Judge.*

KAUFMAN, Chief Judge:

We are called upon to decide a narrow, but important, issue of statutory construction under section 13 of the Rivers and Harbors Appropriations Act of 1899 (Refuse Act of 1899), 33 U. S.C. § 407 (1970).[1] The question pre-

---

* United States District Court, Southern District of New York, sitting by designation.

1. It shall not be lawful to throw, discharge, or deposit, or cause, suffer, or procure to be thrown, discharged, or deposited either from or out of any ship, barge, or other floating craft of any kind, or from the shore, wharf, manufacturing establishment, or mill of any kind, any refuse matter of any kind or description whatever other than that flowing from streets and sewers and passing therefrom in a liquid state, into any navigable water of the United States, or into any tributary of any navigable water from which the same shall float or be washed into such navigable water; and it shall not be lawful to deposit, or cause, suffer, or procure to be deposited material of any kind in any place on the bank of any navigable water, or on the bank of any tributary of any navigable water, where the same shall be liable to be washed into such navigable water, either by ordinary or high tides, or by storms or floods, or otherwise, whereby navigation shall or may be impeded or obstructed: *Provided*, That nothing herein contained shall extend to, apply to, or prohibit the operations in

sented is whether the Government sustained its burden of proving a violation of that provision when it established a *likelihood* that refuse discharged into a tributary reached navigable water or whether it was required to prove that the discharge *actually* had reached navigable water. In the district court, Judge Gurfein adopted the first view and, in a trial without a jury, found the American Cyanamid Company guilty of violating the Act. We concur in that reading of section 13 and, accordingly, affirm the conviction.

■ A brief overview of the Refuse Act of 1899 will help place the issue on appeal in the proper context. The 1899 Act, which has recently attained prominence in the ongoing battle to save our natural resources, *see* Rodgers, Industrial Water Pollution and the Refuse Act: A Second Chance for Water Quality, 119 U.Pa.L.Rev. 761, 761–69 (1971), represented an early ·effort by Congress to protect our waterways from the discharge of pollutants resulting from the onward march of an industrialized society. In essence, section 13 prohibits the discharge of refuse, other than liquid sewage, into the navigable waters of the United States and forbids the depositing of all material on the banks of navigable waters into which such matter is "liable to be washed." 33 U.S.C. § 407. The Supreme Court, in tracing the sparse legislative history of this provision, has noted that "[s]ection 13 codified pre-existing statutes . . . ." United States v. Standard Oil Co., 384 U.S. 224, 226, 86 S.Ct. 1427, 1428, 16 L.

Ed.2d 492 (1966). From a study of the antecedent statutes [2] and the legislative history of the 1899 Act, the Court concluded that "the 'serious injury' to our watercourses . . . sought to be remedied was caused in part by obstacles that impeded navigation and in part by pollution . . . ." *Id.* at 228–229, 86 S.Ct. at 1429. The thrust of the *Standard Oil* opinion is that courts must be mindful of their responsibility to give full effect to an overriding societal interest in the preservation of a clean, healthy environment when called upon to interpret the Act and that the history and legislative background forbid a narrow, cramped reading of the section. *Id.* at 226, 86 S.Ct. 1427, citing United States v. Republic Steel Corp., 362 U.S. 482, 491, 80 S.Ct. 884, 4 L.Ed.2d 903 (1960).

### I.

The facts before us are quite straightforward. American Cyanamid operates its Standard Coated Products plant in Buchanan, New York, on the bank of Dickey Brook, one mile from where the brook flows into the Hudson River. The brook is a tributary of the Hudson, part of the navigable waters of the United States. One-half mile from the plant, Dickey Brook widens into an inlet-cove characterized by tidal marshes and mud flats. A road, Broadway, has been built across the cove. The stretch of water between Broadway and the river is known to local residents as Lents Cove.

On Saturday, August 12, 1972, a Cyanamid employee, in the course of his

connection with the improvement of navigable waters or construction of public works, considered necessary and proper by the United States officers supervising such improvement or public work: *And provided further*, That the Secretary of the Army, whenever in the judgment of the Chief of Engineers anchorage and navigation will not be injured thereby, may permit the deposit of any material above mentioned in navigable waters, within limits to be defined and under conditions to be prescribed by him, provided application is made to him prior to depositing such

material; and whenever any permit is so granted the conditions thereof shall be strictly complied with, and any violation thereof shall be unlawful.
Act of March 3, 1899, ch. 425, § 13, 30 Stat. 1152; 33 U.S.C. § 407.

2. The Court examined the following statutes: Act of August 5, 1886, ch. 929, § 3, 24 Stat. 310, 329; Act of June 29, 1888, ch. 496, 25 Stat. 209; Act of September 19, 1890, ch. 907, § 6, 26 Stat. 426, 453; Act of August 18, 1894, ch. 299, § 6, 28 Stat. 338, 363.

regular duties, neglected to close a water valve in the plant. As a result, a storage tank in the basement of the plant overflowed, releasing a mixture of titanium dioxide and calcium carbonate [3] through a storm drain into Dickey Brook. The accident was discovered on Monday morning, August 14, by passers-by who noticed that the flowing brook had turned a milky white. Upon learning of the accident, Cyanamid shut off the open spigot and plugged the drain, which, however, Cyanamid later flushed into the brook. Approximately four cubic feet of chemical solids were discharged into Dickey Brook.

The district court concluded that on this evidence, Cyanamid had violated section 13 of the Refuse Act which provides in the portion relevant to our consideration that:

> It shall not be lawful to . . . discharge . . . from . . . manufacturing establishment . . . of any kind, any refuse . . . into any navigable water of the United States, or into any tributary of any navigable water *from which the same shall float or be washed into such navigable water* . . . (emphasis added).

Although there was evidence at trial that polluting chemicals entered the inlet-cove flowing at least as far as Broadway and that, in addition, water flowed freely through large culverts under Broadway, the district judge decided that "[t]he Government has failed to establish beyond a reasonable doubt that the particular refuse discharged on August 12–14, 1972 *actually* was washed into navigable water." (emphasis added). He, nevertheless, found as a fact that "[t]he discharge of refuse was extensive enough so it would be likely to be washed into the navigable water," and that proof of such conduct was sufficient to make out a violation of the statute.

## II.

The sole question on appeal is whether the district judge erred in his construction of the Act. Cyanamid argues that inclusion in the statute of the phrase "shall float or be washed" compels this Court to require proof that the refuse discharged into a tributary *actually* reached navigable water before a violation of section 13 can be established. We find the argument unpersuasive both as a matter of linguistics and common sense.

Although the legislative history of the 1899 Act, meager as it is, hardly illuminates the Congressional intent embodied in the phrase "shall float or be washed," this Court is not without guidance in interpreting the Refuse Act. The Supreme Court has stated that section 13 is to be read "charitably." United States v. Standard Oil Co., *supra*, 384 U.S. at 230, 86 S.Ct. 1427. *Standard Oil* was concerned with the accidental dumping of aviation gasoline into the St. Johns River and the language of the majority opinion is significant. The Court admonished that a broad reading of section 13 was appropriate and "in keeping with the teaching of Mr. Justice Holmes that a 'river is more than an amenity, it is a treasure' . . . ." *Id.* at 230, 86 S.Ct. at 1430. *See* also United States v. Republic Steel Corp., 362 U.S. 482, 80 S.Ct. 884, 4 L.Ed.2d 903 (1960). This clear mandate of the Supreme Court, which, at least here, qualifies the maxim that criminal statutes are to be narrowly construed, justifies, if indeed it does not compel, a liberal reading of the statute.

As indicated above, section 13 prohibits the discharge of refuse into "any tributary of any navigable water from which the same shall float or be washed into such navigable water . . . ." The phrase "shall float or be washed"

---

3. Although we are told that neither of these chemicals is toxic, section 13 prohibits the discharge of "any refuse matter of any kind or description." Accordingly, *Standard Oil* teaches that a substance, however useful it may earlier have been, is "refuse" within the meaning of the Act when discharged into a waterway. 384 U.S. 224, 229, 86 S.Ct. 1427, 16 L.Ed.2d 492 (1966).

allows for possibility or likelihood. The language "shall float" clearly anticipates a future occurrence. If Congress had intended to require a showing that refuse actually had floated into navigable water before section 13 had been violated, it would have said so explicitly by using the language "shall have floated or washed."

Indeed, were we to adopt Cyanamid's reading of the statute, we would be led to an illogical result. The second clause of section 13 makes unlawful the mere piling of material on a tributary's bank, from "where the same *shall be liable* to be washed" into the water. (emphasis added). That being so, it seems fatuous to attribute to Congress an intention not to punish discharges of similar matter directly into the tributary unless the Government affirmatively proved that the refuse had actually reached navigable water. It serves no discernible purpose and taxes common sense to establish a stricter standard of proof for cases in which pollutants are *definitely* being discharged into a tributary than for those where the material is piled on the tributary's bank and it is, in the language of the statute, merely "liable to be washed" into the water.

The interpretation which appellant urges upon this Court is precisely the type of "cramped" reading that the Supreme Court has cautioned against. United States v. Republic Steel Corp., *supra* at 491, 80 S.Ct. 884. Semantic gymnastics must not be allowed to undermine a Congressional purpose to preserve the purity of our waterways. Conservation of our once formidable natural resources is a matter of profound national concern. Congress has acted to accommodate the diverse, often conflicting, needs of our highly industrialized society through legislation, such as the Refuse Act of 1899. Moreover, in arriving at our conclusion we are not unmindful of Learned Hand's eloquent guide to statutory construction, that we must "remember that statutes always have some purpose or object to accomplish, whose sympathic and imaginative discovery is the surest guide to their meaning." Cabell v. Markham, 148 F.2d 737, 739 (2d Cir. 1945).[4]

Affirmed.

water between the plant and Broadway), is a "navigable water" within the meaning of section 13.

---

4. In view of our disposition of this case, we need not decide whether the inland portion of Dickey Brook, (that is, the