CITIZENS ASSOCIATION OF GEORGETOWN et al., Plaintiffs,

v.

Walter E. WASHINGTON, Commissioner of the District of Columbia, et al., Defendants.

Civ. A. No. 1944-73.

United States District Court, District of Columbia.

Jan. 2, 1974.

Bruce J. Terris, Suellen T. Keiner, Washington, D. C., for plaintiffs.

John C. Salyer, Asst. Corp. Coun., District of Columbia, for defendants.

Charles Steele, Washington, D. C., for Maloney Concrete Corp.

Burton Schwab, Washington, D. C., for Georgetown-Inland Corporations.

CHARLES R. RICHEY, District Judge.

Plaintiffs seek a Declaratory Judgment, Mandatory and Injunctive Relief in order to prevent an alleged increase in air pollution that may be caused by the completion of construction of two buildings in the Georgetown waterfront area by the Maloney Concrete Corporation's Dodge Center Development and the Waterfront Development of Georgetown-Inland Corporation. The matter before the Court now is Plaintiffs' application for a Preliminary Injunction.

It is alleged that jurisdiction of this Court is vested under the provisions of Section 1857h-2(a), the Clean Air Act of 1970, and Section 1331(a) of Title 28, which gives the District Court jurisdiction over cases involving federal questions in which the amount in controversy exceeds $10,000.00, exclusive of interest and costs. The Defendants, Washington, Dugas, McKinney, and the two corporations deny that the Clean Air Act gives the Court jurisdiction upon the theory that the statute only authorizes suits against governmental instrumentalities or agencies *presently* in violation of emission standards, and, in addition, they allege there is no present violation of any law or regulation by any of the Defendants. Further, the Defendants deny that the amount in controversy exceeds $10,000.00 except that the two building or construction companies will suffer more than such damage should an injunction issue out of this Court prohibiting the further construction of their projects.

## I. INTRODUCTION AND BACKGROUND

### A. *The Parties*

The Plaintiff, Citizens Association of Georgetown, a non-profit group, founded in 1878, has a long history of fighting

to preserve the historical, scenic, and national values of this City and its environment. It sues here on behalf of its members as well as itself.

The Plaintiff, Committee of 100 on the Federal City, is a non-profit group, founded in 1923, whose purposes include the promotion of sound land-use planning techniques and generally to make the nation's capitol a better place in which to live. It sues on behalf of its members and itself. It alleges that several of its members own property in the Georgetown *area* and claims the members of the Committee will be seriously injured by the alleged increase in air pollution that will possibly be produced in the Washington area by the developments here on challenge at 1010–1014 Wisconsin Ave., N.W. by the Defendant, Maloney Concrete Corporation, and the complex at 1055 Thomas Jefferson St., N.W. by Defendants, Georgetown-Inland Corporation.

The local governmental defendants are the Commissioner of the District of Columbia, Walter E. Washington, the Director of the D.C. Department of Economic Development, Julian R. Dugas, and the Acting Director of the D.C. Department of Environmental Services, William C. McKinney. These defendants have the authority and responsibility under the federal and District of Columbia air pollution control statutes, the Clean Air Act of 1970 (42 U.S.C. § 1857 et seq.) and the District of Columbia Air Pollution Control Act (6 D.C.Code 811 et seq.), to prepare a comprehensive program to control and prevent air pollution in the District of Columbia. Commissioner Washington has the responsibility under the Clean Air Act to adopt an air quality plan that will implement, maintain and enforce the national air quality standards within the District of Columbia, 42 U.S.C. §§ 1857c–5(a)(1) and 1857c–5(a)(2). Defendant Dugas has the authority and responsibility to direct and supervise the issuance, suspension, revocation or modification of permits for the construction and operation of stationary sources of air pollu-

tion in the District. District of Columbia Air Quality Control Regulations, Title 8, Section 2:720(a), (c) and (1), (July 7, 1972); Commissioner's Order 73–166 (July 6, 1973). Defendant McKinney has the duty to supervise the execution of programs and functions involving the prevention and minimization of air pollution in the District and in particular to approve any permits for construction or modification and operation of any stationary source of air pollution. In addition, Defendant McKinney has the responsibility to direct the submission, revision, implementation and enforcement of the District of Columbia's Air Quality Implementation Plan, as required by the Clean Air Act, 42 U.S.C. § 1857c–5, 6 D.C.Code 813.

Private Defendant Georgetown-Inland Corporation (Inland) consists of five affiliates of Inland Steel Corporation which are corporations qualified to do business in the District of Columbia. Inland has plans over the next five years to construct in three phases an $80 million complex of shops, restaurants, offices, a hotel and a conference center on a seven-acre site in the Georgetown waterfront area. Among the five Inland affiliates, only Defendant Georgetown-Inland North Corporation has a building permit and is in the process of constructing a building which will contain space for offices, shops and a parking garage, and which will be powered by electricity.

Defendant Maloney Concrete Company (Maloney) is a Delaware Corporation operating a ready-mix concrete business in Washington, D. C. Maloney is the owner and developer of the Dodge Center complex of offices and shops in the Georgetown waterfront area. Maloney has also obtained a building permit and commenced construction. Maloney, like Inland, has investments in its development running well into the millions of dollars. Furthermore, Maloney contends that it sustained financial losses of 1.5 million dollars from earlier zoning litigation involving the same developments, *see* Citizens Association of Georgetown,

Inc. v. Zoning Commission of D. C., 155 U.S.App.D.C. 233, 477 F.2d 402 (1973), and that further delay in construction would precipitate financial ruin. See Memorandum of Points and Authorities of Maloney Concrete Company Complaint in Opposition to Plaintiffs' Motion for a Preliminary Injunction.

B. *The Legislative Background Entrusting Certain Aspects of Air Pollution Control in the District of Columbia to Defendants Washington, Dugas and McKinney Under the Supervision and Final Authority of the Environmental Protection Agency.*

This case is before the Court on Plaintiffs' Motion for a Preliminary Injunction wherein Plaintiffs contend that the Maloney and Inland projects will cause violation of the national and District of Columbia primary ambient air standards by virtue of the large volume of air pollutants that will be emitted from automobiles carrying employees, visitors and customers to and from the new developments. Plaintiffs argue that the District of Columbia violated statutory and regulatory duties in granting each developer a building permit without first determining whether each new project will interfere with air quality levels for the District mandated by Congress in the Clean Air Act of 1970, 42 U.S.C. § 1857c–5. Plaintiffs call upon the Court to revoke the building permits and order that formal administrative procedures to determine the air quality impact of the developments are required before the construction may continue.

Resolution of the Motion presently before the Court requires that we address briefly the difficult procedural problems resulting from recently enacted programs for enhancing the quality of the air in the District of Columbia. In part, these programs, as will be demonstrated below, were based on incorrect interpretations of the Clean Air Act that resulted in the implementation of applicable air quality review procedures in the District *after* Defendants Malo-

ney and Inland had obtained their building permits and commenced construction.

Washington, D. C., like all the states, was required to submit to the Environmental Protection Agency (EPA) an air quality implementation plan which would meet a variety of federal standards regarding the regulation of air pollution. 42 U.S.C. § 1857c–5(a)(1) et seq. The Clean Air Act requires that the implementation plan by implementing a variety of controls attain the primary federal standards "as expeditiously as practicable but * * * in no case later than three years" after approval of the plan unless the Administrator of EPA grants an extension. 42 U.S.C. §§ 1857c–5(a)(2)(A)(i), 1857c–5(e)(1). The Administrator approved the D.C. plan in 1972 (37 Fed.Reg. 2582) but recently proposed an extension which he will presumably approve that will require the District to attain the primary standards by May 31, 1977. 38 Fed.Reg. 20759.

The District of Columbia plan provides the focus of this litigation since the incompleteness of the plan at the crucial stage where the District granted building permits to Maloney and Inland provides the basis for Plaintiffs' strongest argument, namely, that the Act required a preconstruction review of projects like those of Defendants to determine their consistency with attainment of the national standards after the Congressionally mandated effective date of the implementation plan, notwithstanding the failure of the plan itself to provide the applicable procedures. The timing of the plan thus becomes critical to Plaintiffs' argument and therefore must be set forth in some detail.

The Clean Air Act's timetable for completion and implementation of the District of Columbia plan is contained in Section 110 of the Act. 42 U.S.C. § 1857c–5. EPA's promulgation of the aforementioned national ambient air quality standards begins the implementation plan process. Within nine months of such promulgation the Dis-

trict was required to submit a plan to implement such standards. Within four months after the date for submissions EPA was required to approve or disapprove the plan. Most importantly, for the purposes of the case at bar, EPA was required to promulgate substitute regulations having the force of law in the District of Columbia for disapproved or omitted plan portions within six months after the date for plan submission. Thus, the Act required that a complete plan be in effect not later than fifteen months after EPA's promulgation of the national standards. EPA set such standards on April 30, 1971. 36 Fed.Reg. 8186. Therefore, EPA approvals and promulgation of the D.C. Implementation Plan were required by Congress to be completed by July 31, 1972.

As noted earlier, the D.C. plan was approved by EPA and in effect in 1972. However, later events determined the incompleteness of the original plan and its elemental shortcomings in the attainment and maintenance of the national standards by the date Congress provided. The events referred to resulted from litigation not directly related to the present case, Natural Resources Defense Council, Inc. v. EPA, 154 U.S. App.D.C. 384, 475 F.2d 968 (1973). Specifically, EPA withdrew approval from the maintenance provisions of the D.C. plan, 38 Fed.Reg. 12920 (May 17, 1973), and proposed a comprehensive new source review procedure to review so-called indirect sources of air pollution, like Defendants' parking garages, to determine whether construction or modification of the facilities will generate excessive pollution from automobile activity associated with the operation of such facilities and thereby interfere with a locality's attainment and maintenance of the primary standards. 38 Fed.Reg. 15834 (June 18, 1973). EPA required the District to submit appropriate plan provisions by August 15, 1973 and, in the event the District failed in this legislative task, EPA would promul-

gate the necessary review procedures by December 15, 1973.

In a separate rulemaking procedure also pursuant to an order by the Court of Appeals for the District of Columbia in NRDC v. EPA, *supra*, (January 31, 1973) as modified November 8, 1973), the Administrator of EPA promulgated a transportation control strategy for Washington, D. C. as required under Section 110 of the Clean Air Act, 38 Fed.Reg. 31536 (November 15, 1973). The particular regulation promulgated by EPA that is relevant to the statutory and regulatory duties of the District of Columbia challenged in this litigation is the newly required pre-construction review of parking facilities of more than 250 spaces in the District of Columbia. Both Maloney and Inland developments provide parking space in excess of the above number. However, the Administrator made a significant determination with respect to the application of this review procedure to parking garages and building/parking projects which commenced construction after the effective date of such rules and regulations established by the requirements of Section 110 of the Clean Air Act of 1970 but previous to the actual formulation and promulgation of the rules themselves which set forth prescribed procedures which the District of Columbia must follow. With respect to such facilities begun, as it were, within the regulatory void, the Administrator commented as follows:

> "Although the Administrator believes that he would have had discretion under the Court order (NRDC v. EPA, *supra*) and general principles of administrative law to promulgate a retroactive regulation in these jurisdictions, consideration of equity, in his judgment, tipped the balance against it."

The Court believes the EPA decision as to application of this regulation controlling of the question whether the District of Columbia should be ordered by the Court to conduct an air quality analysis

of the Maloney and Inland projects. See Part III of this Memorandum Opinion.

## II. JURISDICTION

■ The Court has determined that jurisdiction does not lie under 42 U.S.C. § 1857h–2(a), as that section is limited to an action brought " . . . to enforce . . . an emission standard or limitation . . .", and to an action in the nature of mandamus against the Administrator of the Environmental Protection Agency. Since there is no final standard in effect in Washington, D. C. at present, none can be enforced against the Maloney and Inland projects. In addition, the Administrator has not been named as a party-defendant in the present action.

■■ However, the Court is of the opinion that this Court can exercise jurisdiction under 28 U.S.C. § 1331, which gives the district courts jurisdiction over a federal question in which the amount in controversy exceeds $10,000. The Court has determined that a substantial federal question exists as to whether the Clean Air Act of 1970 requires that the Maloney and Inland developments be reviewed during their construction to determine their potentiality for interfering with attainment and maintenance of the national standards in Washington, D. C. The Court also has concluded that injury to Plaintiffs' health from the violation of national ambient air standards represents an amount in controversy that exceeds $10,000, exclusive of interest, costs, and attorneys' fees.[1]

## III. DECISION

*The Court Will Deny Plaintiffs' Motion for Preliminary Relief Due to the Absence of a Threat of Immediate Injury, the Unlikelihood That Defendants' Developments Will Violate the National Standards, and the Intervening Determination by EPA That Pre-Construction Review Procedures Relevant to the Facilities in Issue Will Not Be Applied Retroactively to the July, 1973 and August, 1973 Dates When Maloney and Inland, Respectively, Commenced Construction.*

■ This case is presently before the Court on Plaintiffs' Motion for a Preliminary Injunction to enjoin construction of the Maloney and Inland projects on the grounds that there has been no administration of an air quality impact analysis to insure that the air pollution associated with the new source will not interfere with the attainment or maintenance of air quality standards in the District of Columbia. Defendants' failure to review the air quality of the projects before proceeding with construction allegedly interferes with the statutory objective of the Clean Air Act of 1970 to attain and maintain the national standards and, therefore, violates the Clean Air Act, 18 U.S.C. § 1857c–5, the D.C. Air Quality Control Act, 6 D.C.Code 811–813, the D.C. Air Quality Control Regulations, Title 8, Section 2:701, et seq., and the D.C. Air Quality Implementation Plan. Because of the unfamiliar and technical questions concerning the probability of future violations of the national ambient air standards, the Court has approached this litigation with great "diffidence" and judicial restraint. See International Harvester Co. v. Ruckelshaus, 155 U.S.App.D.C. 411, 478 F.2d 615 (1973). Consequently, the Court has concluded that Plaintiffs' Motion for a Preliminary Injunction must be denied in light of Plaintiffs' failure to demonstrate to the Court's satisfac-

---

1. Compare cases where courts have held that intangible rights ranging from freedom of expression to draft deferment may be regarded as worth more than $10,000, collected in Note, Judicial Review of Military Surveillance of Civilians: Big Brother Wears Modern Army Green, 72 Col.L.Rev. 1009, 1018 (1972). See also Tatum v. Laird, 144 U.S. App.D.C. 72, 444 F.2d 947 (1971), rev'd on other grounds, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972), for discussion of view that the cost to the *defendant* may control the jurisdictional amount issue. As noted above, the cost of defendants' projects is well in excess of $10,000.

tion that there is a likelihood they will prevail on the merits, Virginia Petroleum Jobbers Ass'n v. FPC, 104 U.S.App. D.C. 106, 259 F.2d 921 (1958), or that they will sustain irreversible harm from the denial of the injunction, see Businessmen Affected by the Second Year Plan v. District of Columbia Land Agency, 143 U.S.App.D.C. 161, 442 F.2d 883 (1971).

### A. Plaintiffs Have Failed to Demonstrate the Likelihood of Their Success on the Merits.

Plaintiffs' assertions on the merits of this case are that the Maloney and Inland projects will violate the national and District of Columbia ambient air quality standards on the date Congress provided, that the projects presently violate the Clean Air Act's new source review requirement to prevent new construction that will prevent attainment of the standards, that the projects also violate the District of Columbia stationary source construction permit requirement and that construction of the projects is contrary to the specific policy of the District of Columbia Implementation Plan to limit further growth in the central business district which is consistent with environmental needs. Plaintiffs' allegations are without firm basis in any of the statutes or regulations relied on, and, in the last analysis, require the Court to enter into considerations that are essentially an administrative rather than a judicial function.

While Plaintiffs several times in their papers suggest that Defendants Maloney and Inland *are* in violation of the national and District of Columbia primary ambient air quality standards, it is clear the Plaintiffs contend that the projects *will* violate such standards. The primary ambient air standards in question have been promulgated by the Administrator of EPA, 40 CFR § 50, and, subsequently, adopted without change by the District of Columbia and approved by EPA (37 Fed.Reg. 19857) pursuant to the Clean Air Act. 42 U.S.C. § 1857d–1. The pertinent standards to the instant action are those issued for the three pollutants whose primary source is the automobile: carbon monoxide, photochemical oxidants, and hydrocarbons. The date on which the levels of these pollutants in the ambient air of the District of Columbia must meet the published standards is established under the requirements of Section 110 of the Clean Air Act of 1970 subject only to several well-defined statutory extensions. As mentioned earlier, the District of Columbia's compliance with the primary air quality standards will probably be required by May 30, 1977. Quite clearly, then, Defendants' developments cannot be held to those primary ambient air standards *today*! See Citizens for Clean Air v. Corps of Engineers, 356 F.Supp. 14 (S.D.N.Y.1973).

 The question then arises as to whether the projects, if they are likely to prevent attainment of the standards in 1977, are presently in violation of the Clean Air Act's requirement that the District of Columbia have in effect by a date certain a plan to achieve the national standards "as expeditiously as practicable." 42 U.S.C. § 1857c–5(a)(2)(A)(i). This question requires a determination by this Court as to whether the D.C. implementation plan will be successful. The Court must decline such review of the plan. Where, as here, the applicable portions of the implementation plan are completed after the Congressionally prescribed effective date of the plan, and after construction of new and unreviewed sources of air pollution has begun, the Court believes it appropriate to defer to administrative judgment regarding the necessity for retroactive application of the completed implementation plan to insure that the primary ambient air standards will be attained "as expeditiously as practicable." Recently, the Administrator of EPA in promulgating a parking facility review regulation for the District of Columbia determined that it was unnecessary and inequitable to apply the regulation to projects such as those challenged in the case at bar. This decision

is entitled to a presumption of regularity which the Court finds controlling with respect to Plaintiffs' argument that the instant projects are likely to prevent an expeditious and timely attainment of the air quality standards in the District of Columbia. See Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

The Court lacks the evidentiary record and scientific expertise necessary to embark on a determination of whether the Maloney and Inland projects portend a pattern of air pollution of a magnitude that will prevent the District from attaining the standards by 1977. See Environmental Defense Fund, Inc. v. Ruckelshaus, 142 U.S.App.D.C. 74, 439 F.2d 584 (1971). In such circumstances, the Court deems it appropriate to defer to the judgment of the Administrator of EPA who has the authority, in light of the District's failure to promulgate the necessary regulations, to formulate such regulations, articulate the criteria which support their promulgation, 42 U.S.C. § 1857c–5(c), and where necessary, to enforce their provisions. 42 U.S.C. §§ 1857c–8 and 1857c–9(b)(2). Since Congress assigned to the Administrator of EPA the primary responsibility to enforce applicable provisions of an implementation plan where necessary to the Act's objectives, the Administrator's decision not to enforce the plan against the projects at issue here is significant.[2] See Connecticut Action Now, Inc. v. Roberts Plating Company, Inc., 457 F.2d 81 (2nd Cir. 1962). Indeed, where Congress has provided a detailed administrative process for the formulation and promulgation of new source review regulations, "great respect must be paid to the presumptive exclusivity of that process." Citizens for Clean Air v. Corps of Engineers, *supra*, 356 F.Supp. at 18. Therefore, in the absence of a nuisance which poses immediate and irreparable harm to Plaintiffs, and where the ambient air quality standards as yet have no relevance to the alleged statutory violations of the buildings in question, the Court will defer to the judgment of the Administrator of EPA in his rulemaking authority and reject Plaintiffs' contention that the developments will result in concentrations of harmful pollutants in excess of the primary standards of the Clean Air Act. Plaintiffs will have the opportunity at trial on the merits to present evidence proving that the standards will indeed be exceeded in 1977. See Movement Against Destruction v. Volpe, 361 F.Supp. 1360 (D.C.Md.1973). However, the Court notes in passing that estimating the increased air pollution generated from defendants' projects is a highly speculative undertaking, Wuillamey v. Werblin, 364 F.Supp. 237 (D.C. N.J.1973), and may very well present judicially unmanageable standards.

The Court has also concluded that Maloney and Inland were not required to obtain stationary source construction permits prior to construction pursuant to the District of Columbia Air Quality Control Regulations, Title 8, Section 2:701, et seq. Since Defendants' parking garages are alleged to contain mobile sources of emissions, the present stationary source regulations concerning direct emissions from the building itself are inapplicable. See this Court's Opinion in Metropolitan Washington Coalition for Clean Air v. Department of Economic Development, 373 F.Supp. 1096 (D.D.C.1973). The Clean Air Act's provision for regulating emissions from stationary sources, 42 U.S.C. §§ 1857c–6 to 1857c–7, was not originally interpreted by EPA to include buildings with ga-

---

**2.** See Plaintiffs letters sent to the Administrator of the Environmental Protection Agency, and the Defendants on July 13, 1973, pursuant to 42 U.S.C. 1857h–2(b)(1)(A), advising them of Defendants' alleged violations of the Clean Air Act of 1970 and the District of Columbia law.

EPA's indirect response supports this Court's conclusion that EPA will not adopt or enforce retroactively an implementation plan applicable to Defendants' projects or others similarly situated in the District of Columbia.

rages in its publication of lists of categories of stationary sources and performance standards relating thereto pursuant to 42 U.S.C. § 1857c–6. See 40 CFR § 50.1 et seq. Recently the EPA Administrator has entertained thoughts of enlarging the scope of new stationary source review, but the Administrator's reflection on removing certain exemptions from the review regulations is inapposite to the matter at bar. See 38 Fed.Reg. 9599 (April 18, 1973).

The new indirect source review procedures [3] recently proposed and promulgated by the Administrator of EPA pursuant to an order of the Court of Appeals for the District of Columbia, NRDC v. EPA, *supra*, were not effective in the District of Columbia at the time Maloney and Inland received building permits, 38 Fed.Reg. 29893 (October 30, 1973), and, at present, do not appear to be retroactively applicable to those projects. Compare order of the Court of Appeals for the District of Columbia entered October 23, 1973, NRDC v. EPA, supra, with comments of Administrator of EPA, 38 Fed.Reg. 31536 (November 15, 1973).

B. *Plaintiffs Will Not Sustain Irreversible Harm From the Denial of the Injunction.*

Plaintiffs concede that the construction in itself is not harmful to the ambient air quality in Georgetown, but argue that they will be irreparably injured by construction of the developments because it is extremely unlikely that the operation of the buildings will be enjoined once they have been built. See Maryland, etc., Planning Commission v. Postal Service, 487 F.2d 1029 (D.C.Cir.1973). The Court recognizes Plaintiffs' dissatisfaction over the failure of the District of Columbia to adopt and apply to Defendants' projects a new source review procedure that will evaluate the increased air pollution from the developments. However, that dereliction

on the part of the D.C. government leaves Plaintiffs and others similarly situated in a regulatory vacuum or void. The Administrator of EPA in his tardy efforts to complete the District of Columbia implementation plan has decided not to make the amended new source review procedures applicable to the instant projects. Implicit in that determination is the judgment that said projects will not bring about the violation of the standards as Plaintiffs suggest, and ultimately, will not threaten harm to Plaintiffs' health.

### CONCLUSION

For the foregoing reasons, the Court is entering an order of even date herewith denying Plaintiffs' Motion for a Preliminary Injunction.

---

3. The new indirect source review procedures are words of art which the Court regards as synonymous with "complex sources," a term used by the parties in oral argument and in their papers.