TOWN OF NORTH HEMPSTEAD, The Council of Greater Manhasset Civic Association, an unincorporated association, The North Hills Preservation Committee, an unincorporated association, Muriel Koeppel, Katherine M. Rooney, Marilyn A. Hoffman, M. D., Col. Eugene Schuff, Mae Schuff, Lowell Kane, M. D., Richard Milgroom and Frederick Brown, M. D., Plaintiffs,

v.

VILLAGE OF NORTH HILLS, Nassau County Sewer District No. 2, Manhasset-Lakeville Water District, Frank Martucci, as Mayor of the Village of North Hills, Louis Foti, Teresa Shamscher, Edward Schumacher, and Frank O'Connor, as Trustees of and constituting the Board of Trustees of the Village of North Hills, Henry Cazalet, Arthur Gatehouse, George Bayer, Alexander Summers and Michael Tsontas, as members of and constituting the Board of Appeals of the Village of North Hills, Defendants.

No. 78 C 520.

United States District Court,
E. D. New York.

Dec. 6, 1979.

Joseph A. Guarino, Town Atty., Town of North Hempstead, Manhasset, N. Y., for plaintiffs.

Jaspan, Kaplan & Levin, Garden City, N. Y., by A. Thomas Levin, Garden City, N. Y., for defendants Village of North Hills, Foti, Shamscher, O'Connor, Cazalet, Gatehouse, Bayer, Summers and Tsontas.

Molloy, Fletcher, Dunne & Sibell, Manhasset, N. Y., by John P. Dunne, Manhasset, N. Y., for defendant Manhasset-Lakeville Water District.

Marshall, Bratter, Greene, Allison & Tucker by James M. Bergen, Nicholas A. Robinson, New York City, and John Francis Woog, Garden City, N. Y., for Martucci and Roslyn Pines, Inc., intervenor-defendants.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

This is an action to enjoin the construction of residential development projects in the Village of North Hills, Town of North Hempstead, Nassau County. Jurisdiction allegedly exists on the basis of anticipated environmental injury unless the development is halted, all in claimed violation of various federal environmental laws herein-

after mentioned. Plaintiffs are the Town of North Hempstead, two civic associations, and several residents of the Village of North Hills. In addition to the Village, defendants are the Mayor and Board of Trustees of North Hills, and the municipal agencies responsible for sewage treatment and drinking water supply in the Village. Since owners of property which would be affected were not joined, the court by order dated December 19, 1978 granted leave to Frank Martucci and Roslyn Pines, Inc. to intervene as of right as parties defendant (hereinafter "intervenors").[1] The action is before the court on intervenors' motion to dismiss the complaint pursuant to Rule 12(b)(1) and (6), F.R.Civ.P., for lack of jurisdiction over the subject matter and failure to state a claim upon which relief can be granted. For the reasons which follow, the motion is granted.

The relevant facts are briefly summarized. North Hills is an incorporated village in northwestern Nassau County that encompasses slightly less than three square miles, or approximately 1750 acres. Prior to the complained of actions, North Hills had a population of approximately 300 people, most of its residential area being zoned "R–2", which restricted land use to residential and open space and established a minimum lot requirement of two acres. In 1970, the Village Zoning Ordinance was reformed to retain the basic "R–2" classification but to authorize the "downzoning" of certain areas within the Village to "R–CL", which permitted clustered housing of not more than four residential units per acre on contiguous tracts of four or more acres. (Complaint, ¶¶ 11, 13.)

During 1977, the Board of Trustees of North Hills took a series of actions, more particularly described in Exhibit A to the complaint, "downzoning" and granting variances to twelve parcels of land within the Village. Typical of those actions was the "downzoning" of a 29.1 acre tract owned by intervenors from "R–2" to "R–M" to permit up to six residential units per acre. Just prior to the institution of this action, intervenors had applied for and obtained building permits for the construction of four model homes. The pendency of this suit, intervenors claim, has effectively stalled further development by discouraging the successful negotiation of construction loans and mortgage financing. Robinson Affidavit dated June 22, 1978, at ¶¶ 5–11.

Plaintiffs allege that the environment of the Village and of the areas of the Town of North Hempstead adjoining the Village has been and will be adversely affected by the "downzoning" because of increased pressures on sewage treatment facilities, drinking water supply, and vehicular traffic systems in the area. Hence they seek judgment, *inter alia*, "enjoining defendants, and each of them, from any actions in their official capacities in furtherance of any of the projects set forth in Exhibit A annexed hereto" (Complaint ¶ 31).

Initially, intervenors assert that plaintiffs have made no allegations sufficient to demonstrate that proposed new construction in North Hills may inevitably lead to any impermissible environmental deterioration. Contending that there is currently no "definite and concrete" controversy between the parties, intervenors conclude that the suit is not a "case or controversy" ripe for adjudication under Article III of the Constitution

---

1. Martucci was originally named as a party defendant in his capacity as Mayor of the Village. He has since been succeeded in office by Dr. Lowell Kane, who has become a defendant by operation of Rule 25(d)(1), F.R.Civ.P. Martucci returns as a defendant in his capacity as president and sole shareholder of Roslyn Pines, Inc., a New York corporation owning a parcel of land in the Village listed in Exhibit A to the complaint as being the subject of one of the defendants' complained of actions. By stipulation dated January 2, 1979, the action was discontinued as against defendant Nassau County Sewer District No. 2.

This action is one of several brought over a long period by the Town of North Hempstead and allied interests seeking to enjoin these development projects. Defendants' Reply Memorandum, at 8. In *Town of North Hempstead v. Village of North Hills*, 38 N.Y.2d 334, 379 N.Y. S.2d 792, 342 N.E.2d 566 (1975), the New York Court of Appeals rejected the Town's direct attack on the Village's zoning decisions.

and therefore that the court lacks subject matter jurisdiction. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 81 L.Ed. 617 (1937). See also *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

■ Here, however, unlike the home builders in *Warth v. Seldin, supra*, 422 U.S. at 516, 95 S.Ct. 2197, intervenors have initiated a specific development project for which they have applied and obtained building permits and variances, and, indeed, there appear to be no contingencies, other than the resolution of this litigation, that could thwart the imminent resumption of construction of these projects. See *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941); *Steffel v. Thompson*, 415 U.S. 452, 459, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). While it may be true that future events could more precisely reveal the nature of the anticipated environmental harm plaintiffs fear, what appears to be a real and long-standing adversary relation between the interests represented by these parties forecloses the conclusion that the case must be dismissed for lack of ripeness.[2]

■■ Plaintiffs rely upon Title I of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.* (1970), as the source of substantive obligations imposed on local governments to protect the environment. NEPA, however, by its express language operates only upon federal agencies, and imposes no duties on the States or on municipalities,[3] *Biderman v. Morton*, 497 F.2d 1141, 1147 (2 Cir. 1974); *Ely v. Velde*, 451 F.2d 1130, 1139 (4 Cir. 1971); *Bradford Township v. Illinois State*

*Toll Highway Authority*, 463 F.2d 537, 540 (7 Cir.), *cert. denied*, 409 U.S. 1047, 93 S.Ct. 518, 34 L.Ed.2d 499 (1972), except to the extent that a non-federal entity is found to be acting in partnership with the federal government, *Proetta v. Dent*, 484 F.2d 1146, 1148 (2 Cir. 1973); *Silva v. Romney*, 473 F.2d 287, 289–90 (1 Cir. 1973). See also *Biderman v. Morton, supra*, 497 F.2d at 1147. Plaintiffs make no allegation of federal aid or involvement of any sort that might warrant imposing NEPA obligations on defendants. NEPA's broad declarations of a national environmental policy do not establish substantive rights, *Bradford Township v. Illinois State Toll Highway Authority, supra*, 463 F.2d at 540, and we cannot see how, standing alone, they create a "public trust lodged in" these defendants as plaintiffs claim. (Complaint ¶ 1.) Indeed, recent attempts to extend the reach of federal environmental legislation into areas more properly reserved to State or local decision makers have met with disapproval in this Circuit. See *United States v. Kane*, 602 F.2d 490 (2 Cir. 1979); *United States v. Town of North Hempstead and Citizens Concerned About the Landfill*, 610 F.2d 1025 (2 Cir. 1979).

■ Plaintiffs also invoke the Clean Air Act Amendments of 1970 ("CAA"), 42 U.S.C. § 7401 *et seq.*, and allege that defendants have prevented and will prevent achievement and maintenance of national ambient air quality standards in the area of North Hills and the adjoining areas of the Town of North Hempstead. (Complaint ¶ 26.) It is clear that CAA contemplates that the States should play a major role in combatting air pollution, see *Train v. Natural Resources Defense Council, Inc.*, 421

---

**2.** In view of our decision and the history of this and related litigation, it is unnecessary to discuss intervenors' further contentions that the complaint fails to allege precisely facts sufficient to state a claim and that the subject matter of the complaint presents a non-justiciable political question.

**3.** Plaintiffs' reliance on *Citizens Ass'n of Georgetown, Inc. v. Zoning Commission of the District of Columbia*, 155 U.S.App.D.C. 233, 477 F.2d 402 (D.C.App.1973), as a case in which "the provisions of § 101 [of NEPA] ap-

peared to apply" where the potential environmental effects of a local zoning commission's decision were substantial is misplaced. Plaintiffs' Memorandum of Law at 17–18. The special situation of the District of Columbia, whose Congressionally created Zoning Commission acted on the recommendations of the National Capitol Planning Commission, a federal agency, demonstrates a substantial federal involvement which clearly distinguishes that case from this one.

U.S. 60, 64–68, 95 S.Ct. 1470, 43 L.Ed.2d 731 (1975), and that the State of New York has been delegated responsibility for, *inter alia,* formulating air pollution control plans and issuing permits for emissions from stationary and mobile sources. 42 U.S.C. § 7410. See N.Y.Envir.Conserv.Law (McKinney) Art. 19. But the civil remedy provision of CAA, 42 U.S.C. § 7604, was never intended to permit private actions against a local government until it had violated either a specific emission standard or limitation or a specific order issued by the Administrator of the Environmental Protection Agency ("EPA") or of the appropriate State agency with respect to such a standard or limitation. *Citizens for Clean Air, Inc. v. Corps of Engineers, United States Army,* 356 F.Supp. 14, 18 (S.D.N.Y.1973). See *Citizens' Ass'n of Georgetown v. Washington,* 370 F.Supp. 1101 (D.D.C.1974).

Plaintiffs have pointed to no emission standard or limitation that could conceivably be violated if injunctive relief is not granted. Nor have they raised the issue of the duty of the Administrator of the EPA or of the appropriate New York State agency to promulgate and enforce such standards, or the alleged breach of defendants' duty to obtain an air emission permit and remain in compliance therewith. If CAA is applicable to the development projects plaintiffs seek to halt, it is clear that it is no bar at this stage to further action by defendants.

Furthermore, even if it could be found that plaintiffs have stated a claim under CAA, it is probable that they would be barred for non-compliance with its notice provisions. 42 U.S.C. § 7604(b)(1), requires that 60 days prior to the commencement of a civil action notice of the alleged violation be given to the Administrator of the EPA, to the appropriate agency of the State in which the alleged violation occurred, and to the alleged violator. This section was the prototype for the essentially identical notice provisions of the Safe Drinking Water Act of 1974 ("SDWA"), 42 U.S.C. § 300f *et seq.,* and of the Federal Water Pollution Control Act Amendments of 1972 ("FWPCA"), 33 U.S.C. § 1251 *et seq.* While the latter notice section, 33 U.S.C. § 1365(b), has been held not an absolute barrier to non-complying citizens' suits, its requirements have been partially waived only in cases where plaintiffs' attempts to seek administrative enforcement or plaintiffs' other diligent actions can be deemed constructive notice thereby fulfilling the purpose of the provision to give administrative agencies time to investigate and act on the alleged violation. *Conservation Society of Southern Vermont Inc. v. Secretary of Transportation,* 508 F.2d 927, 938 (2 Cir. 1974), *vacated and remanded on other grounds,* 423 U.S. 809, 96 S.Ct. 19, 46 L.Ed.2d 29 (1975); *National Resources Defense Council v. Callaway,* 524 F.2d 79, 83 (2 Cir. 1975). It does not appear that plaintiffs here have given any notice that might persuade the court to consider relaxing the otherwise mandatory requirements of the notice provisions of CAA, 42 U.S.C. § 7604(b)(1), of FWPCA, 33 U.S.C. § 1365(b)(1), or of SDWA, 42 U.S.C. § 300j–8(b)(1).

■ Turning to plaintiffs' allegations under the Federal Water Pollution Control Act Amendments of 1972 ("FWPCA"), 33 U.S.C. § 1251 *et seq.,* that claim could well be considered abandoned in the light of their discontinuance of the action against the Nassau County Sewer District No. 2, which had originally been named as a defendant. In any event, it has been established that pursuant to 33 U.S.C. § 1365(a) citizens' suits under FWPCA, like those brought under CAA, may only be maintained to enforce a previously promulgated effluent standard or order of the Administrator of the EPA with respect to such a standard. *Stream Pollution Control Board v. United States Steel, Inc.,* 62 F.R.D. 31, 34 (N.D.Ind.1974), *aff'd,* 512 F.2d 1036 (7 Cir. 1975). Thus, plaintiffs' claim under FWPCA suffers from the same defect of prematurity as their claim under CAA and must likewise be dismissed.

■ Similarly, plaintiffs' claim under SDWA, 42 U.S.C. § 300f *et seq.,* must be dismissed. Section 300j–8(a)(1) authorizes a civil action only where there is alleged a

violation of a regulation prescribed by or under the Act, or against the Administrator of the EPA for a failure to perform an act or duty under SDWA. And again it does not appear the plaintiffs have complied with the notice requirements of SDWA.

█ The "Refuse Act", Section 13 of the Rivers and Harbors Appropriation Act of 1899, 33 U.S.C. § 407, likewise provides no remedy for plaintiffs; the Act does not do so by its terms, and it has been held that it does not by implication create a private right of action. *Parsell v. Shell Oil Co.*, 421 F.Supp. 1275, 1279–80 (D.Conn.1976), *aff'd sub nom. East End Yacht Club, Inc. v. Shell Oil Co.*, 573 F.2d 1289 (2 Cir. 1977); *Loveladies Property Owners Ass'n v. Raab*, 430 F.Supp. 276, 281 (D.N.J.1975), *aff'd*, 547 F.2d 1162 (3 Cir. 1976). Although a remedy might exist under the Refuse Act where an obstruction of navigation has been alleged, *Parsell v. Shell Oil Co., supra*, 421 F.Supp. at 1280, plaintiffs make no such allegation. Moreover, any unlawful discharges that might result from the development projects at issue, as plaintiffs suggest (Complaint ¶¶ 22, 27), would be the responsibility of the Nassau County Sewer District No. 2, which has been discontinued as a party defendant in this action by plaintiffs.

██ In a list of statutes under which they claim jurisdiction in their complaint, plaintiffs also cite the Coastal Zone Management Act of 1972 ("CZMA"), 16 U.S.C. § 1451 *et seq.*, but fail to mention CZMA anywhere in their memorandum of law. It is clear that CZMA, which authorizes the Secretary of Commerce to coordinate federal and State coastal areas management plans, is neither a jurisdictional grant, nor a basis for stating a claim upon which relief can be granted. See *Commonwealth of Massachusetts v. Andrus*, 594 F.2d 872, 880 (1 Cir. 1979); see also E. Dolgin & T. Guilbert (Eds.), Federal Environment Law, 831–41 (West Publishing Co., 1974).

█ Finally, plaintiffs also claim as a jurisdictional basis the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.* However, the APA does not independently confer subject matter jurisdiction. See *Califano v. Sanders*, 430 U.S. 99, 105–06, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Thus, it cannot be relied upon where, as here, no claim upon which relief can be granted under federal law has been alleged. Having failed to allege a violation of any duty imposed by law, plaintiffs' claims under the mandamus and declaratory judgment statutes, 28 U.S.C. §§ 1361, 2201 and 2202 are without merit.

█ In conclusion, the court is mindful that a complaint should not be dismissed unless it appears beyond doubt that plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). It is also aware that statutes designed to protect the environment may, under certain circumstances, warrant a liberal interpretation to protect the public interest, see, *e. g., United States of America v. American Cyanamid Co.*, 354 F.Supp. 1202, (D.C.N.Y.) *aff'd*, 480 F.2d 1132 (2 Cir. 1973); see also *United States v. Republic Steel Corp.*, 362 U.S. 482, 491, 80 S.Ct. 884, 4 L.Ed.2d 903 (1960). Nonetheless, the court is of opinion that none of the federal environmental laws relied upon by plaintiffs was intended to apply in the circumstances presented here, and none of them imposes upon defendants any duty owing to plaintiffs. As the Court of Appeals for this Circuit stated in *Biderman v. Morton, supra*, 497 F.2d at 1146, there is "an insurmountable, threshold barrier in [plaintiffs'] failure to identify a discernible basis for the exercise of federal injunctive power over these non-federal defendants." Accordingly, intervenors' motion to dismiss the complaint is granted in all respects.

SO ORDERED.