**STATE OF NEW YORK, Plaintiff,**

v.

**John K. DeLYSER, Defendant.**

**No. Civ. 89–1590L.**

United States District Court,
W.D. New York.

March 11, 1991.

983

Craig Slater, Asst. Atty. Gen., Buffalo, N.Y., for plaintiff.

Samuel A. Dispenza, Jr., East Rochester, N.Y., for defendant.

## DECISION AND ORDER

LARIMER, District Judge.

### INTRODUCTION

Plaintiff, the State of New York ("the State"), brought this action to enjoin defendant, John K. DeLyser ("DeLyser"), from further construction and occupation of a residential structure on Sodus Bay, an inlet of Lake Ontario in Wayne County, New York. The complaint also requests compensatory damages and an order requiring DeLyser to post a $250,000 bond during the pendency of the suit to cover the potential cost of removal of the structure.

Pending before me is DeLyser's motion to dismiss the complaint pursuant to Fed.R. Civ.P. 12(b)(6).

### BACKGROUND

The facts alleged in the complaint, which must be accepted as true for purposes of this motion, are as follows. In February 1986, DeLyser, who owns a parcel of land adjacent to Sodus Bay, applied to the United States Army Corps of Engineers ("the Corps") for a permit to construct a dock and boathouse resting on pilings embedded in the bay. The application did not indicate that DeLyser intended to build a residential structure. The Corps granted DeLyser's application on February 21, 1986.

Although the permit issued by the Corps expressly prohibited construction of living quarters or sanitary facilities, DeLyser began building a two-story residence, with sanitary facilities, on the site. When the Corps learned of this, it issued a ceasework order in July 1986, and also made DeLyser submit an after-the-fact permit application for the building.

In August 1986, DeLyser, who had continued construction of the residence without a valid permit, submitted a consistency certification for the project as required by § 307(c)(3)(A) of the Coastal Zone Management Act ("CZMA"), 16 U.S.C. § 1451 *et seq.*, § 1456(c)(3)(A). The purpose of the certification is to show that the proposed project will be consistent with the State's management plan for its coastal zone.

Pursuant to CZMA, the certification was submitted to the State, which, after review, objected to the proposed structure. As a result, the Corps denied DeLyser's permit application on December 17, 1986. DeLyser appealed that decision to the Secretary of Commerce, who denied the appeal on February 26, 1988.

Despite these setbacks and adverse rulings, DeLyser allegedly continued construction of the residential component of the site, completing the work in 1987. DeLyser then began living in the building, and he continues to do so.

Although the structure is in violation of the Corps' ceasework order and denial of a permit, the Corps has declined to attempt to force DeLyser to remove the unauthorized portions of the structure. A letter from the Corps to the State indicates that the Corps' decision not to enforce its order was based on considerations of funding allocations, and the lack of objections to the structure by any party other than the State.

The State commenced the instant action on December 14, 1989. The complaint asserts the following nine causes of action, which will be discussed in detail below: (1) trespass on lands held by the State in public trust; (2) unreasonable exercise of common-law riparian rights; (3) violation of the Rivers and Harbors Appropriation Act of 1899 ("RHA"), 33 U.S.C. § 401 *et seq.;* (4) violation of the CZMA; (5) public nuisance; (6) trespass on lands owned by the State under the New York Public Lands Law and the Submerged Lands Act ("SLA"), 43 U.S.C. § 1301 *et seq.;* (7) trespass on surface waters; (8) ejectment; and (9) injunction and mandamus.

### DISCUSSION

*1. State's Right of Action Under the RHA*

■ The State alleges that the structure built by DeLyser violates RHA, 33 U.S.C. § 403, which prohibits the "creation of any

obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States ..." Section 403 also makes it unlawful to build any wharf, pier, or other structure in any water of the United States outside established harbor lines, except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army.

■ DeLyser, however, relying on the Supreme Court's decision in *California v. Sierra Club*, 451 U.S. 287, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981), argues that the State has no standing to sue under RHA. In *Sierra Club*, the Court, applying the four-part approach of *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975),[1] for determining whether a private right of action should be inferred from a federal statute, held that 33 U.S.C. § 403 did not create a private right of action. The Court stated that § 403 "is the kind of general ban which carries with it no implication of an intent to confer rights on a particular class of persons." *Id.* 451 U.S. at 294, 101 S.Ct. at 1779. In addition, the Court found no evidence of legislative intent to create a private remedy. The Court held that these two factors were dispositive, and that there was thus no need to address the other two. *See also Sierra Club v. United States Army Corps of Engineers*, 701 F.2d 1011, 1033 (2d Cir.1983) (affirming dismissal of private plaintiff's claim under RHA).

Although *California v. Sierra Club* did not address whether states have standing under RHA, the language and reasoning of that case compel the conclusion that they do not. The Supreme Court repeatedly emphasized that the RHA was designed to give certain powers to the *federal* government. The Court stated that "Congress was concerned not with private rights but with the Federal Government's ability to respond to obstructions on navigable waterways." *Id.* 451 U.S. at 296, 101 S.Ct. at 1780. Similarly, the Court added that

"there is nothing to suggest that [§ 403] was intended to do anything more than empower the Federal Government to respond to obstructions in navigable rivers." *Id.* at 296 n. 7, 101 S.Ct. at 1780 n. 7, and that "the Act was designed to benefit the public at large by empowering the Federal Government to exercise its authority over interstate commerce with respect to obstructions on navigable rivers caused by bridges and similar structures." *Id.* at 295, 101 S.Ct. at 1780.

It is this special role accorded to the federal government that makes irrelevant the fact that plaintiff in this case is a governmental entity. Though plaintiff is a state, the logic of *Sierra Club* remains applicable to the case at bar. For example, as the Supreme Court observed, the language of RHA does not focus on any particular class of beneficiaries, including the states. The fact that the State, like any private party, may suffer injury as a result of a violation of the RHA does not make the State an *especial* beneficiary of the statute; as the Court stated, it is "the public at large" that is meant to benefit. *Id.* at 294–95, 101 S.Ct. at 1779–80.

Furthermore, though the State contends that its interests in this matter are the same as the federal government's, the Supreme Court noted that the statute enables the federal government to exercise its control over interstate commerce. *Id.* at 295, 101 S.Ct. at 1780. The Constitution expressly reserves that interest to the federal government. U.S. Const. art. I, § 8, cl. 3. The State's reliance on the Supreme Court's statement in *Wyandotte Transportation Co. v. U.S.*, 389 U.S. 191, 201, 88 S.Ct. 379, 385, 19 L.Ed.2d 407 (1967), that "a principal beneficiary of the [Rivers and Harbors] Act, if not the principal beneficiary, is the Government itself," is misplaced, since the Court was clearly referring to the federal government.

---

1. The four factors are: whether the plaintiff is a member of the class for whose especial benefit the statute was enacted; whether there is any indication of a legislative intent to create or deny a private remedy; whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy; and whether the cause of action is one traditionally relegated to state law, in an area basically the concern of the states, so that it would be inappropriate to infer a cause of action based solely on federal law. *Cort*, 422 U.S. at 78, 95 S.Ct. at 2088.

*Sierra Club*'s analysis of whether Congress intended to create a private remedy is also instructive. The Court stated that the RHA was passed partly in reaction to the decision in *Willamette Iron Bridge Co. v. Hatch*, 125 U.S. 1, 8 S.Ct. 811, 31 L.Ed. 629 (1888), a case which clearly implied "that in the absence of specific legislation no party, including the Federal Government, would be empowered to take any action under federal common law with respect to ... obstructions [in navigable rivers]. The Act was intended to enable the Secretary of War to take such action." *Sierra Club*, 451 U.S. at 295, 101 S.Ct. at 1780.

Thus, in passing RHA, Congress intended to give the federal government a power which previously had been held by no one. The statute's express grant of that power to the Secretary of the Army, acting through the Department of Justice, 33 U.S.C. §§ 406, 413, and its silence as to any private remedy, confirm that Congress meant to give the power of enforcement only to the federal government. *Id.* at 295 n. 6, 295 n. 7, 101 S.Ct. at 1780 nn. 6, 7.[2]

Though there are few cases directly on point, those courts which have addressed the issue have held that states and their subdivisions do not have a right of action under RHA. In *Romero–Barcelo v. Brown*, 643 F.2d 835 (1st Cir.1981), *rev'd on other grounds sub nom. Weinberger v. Romero–Barcelo*, 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982), the court stated that the fact that the Commonwealth of Puerto Rico was a plaintiff in the case did not alter the court's conclusion that § 13 of the RHA, 33 U.S.C. § 407,[3] did not afford the plaintiffs a right of action, since the statute evidenced no intent to especially benefit state governments. *Id.* at 849 n. 20.

Similarly, in *City of Evansville, Indiana v. Kentucky Liquid Recycling*, 604 F.2d 1008 (7th Cir.1979), *cert. denied*, 444 U.S. 1025, 100 S.Ct. 689, 62 L.Ed.2d 659 (1979), which also held that § 407 did not create a private right of action, the court found that "[p]laintiffs' status as municipalities or a municipal agency is immaterial," since the chief beneficiary of RHA is the *federal* government. *Id.* at 1012 n. 7.

In a post-*Sierra Club* decision, the court in *State of New York v. United States*, 620 F.Supp. 374 (E.D.N.Y.1985), held that New York State could not bring an action based on § 407, since "the RHA makes no explicit provision for any party other than the United States Government to enforce § 13 of the Act," and because the court found no authority for the State to bring the action as an implied private right of action. *Id.* at 379–80.

The State's attempt to analogize this case to *Illinois v. Milwaukee*, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972), in which the Court held that the State of Illinois could bring an action arising under the federal common law of water pollution, is not persuasive. The Supreme Court in *Sierra Club* said that the RHA was enacted in response to the holding in the *Willamette* case that there was *no* federal common law prohibiting obstructions and nuisances in navigable waters. *Sierra Club*, 451 U.S. at 295, 101 S.Ct. at 1780. The Court added that *Willamette* had not abrogated any previously existing federal common law of nuisance with respect to waterways. *Id.* at 296 n. 7, 101 S.Ct. at 1780 n. 7. Thus, *Illinois v. Milwaukee* and other cases dealing with the federal common law of pollution are inapposite.

For all these reasons, then, I conclude that the State does not have an implied

---

**2.** It is also worth noting that the Court in *Sierra Club*, discussing its decision in *Pennsylvania v. Wheeling & Belmont Bridge Co.*, 54 U.S. (13 How.) 518, 14 L.Ed. 249 (1852), in which the State of Pennsylvania sued to enjoin the construction of a bridge, referred several times to the *Wheeling* case as an action by a *private* party. *Sierra Club*, 451 U.S. at 296 n. 7, 101 S.Ct. at 1780 n. 7.

**3.** Though the State correctly points out that the RHA makes § 403, but not § 407, expressly enforceable by injunction, that distinction is insignificant. For one thing, as the *Romero–Barcelo* court noted, courts have recognized the federal government's implied authority to seek injunctive relief under § 407. 643 F.2d at 848. Furthermore, the issue here is not whether the statute is judicially enforceable, but who may seek enforcement.

right of action under RHA. The motion to dismiss the third cause of action is granted.

### 2. Jurisdiction Under the CZMA

■ The fourth cause of action is based on 16 U.S.C. § 1456(c)(3)(A), which states that an applicant for a required federal license or permit to conduct an activity affecting a state's coastal zone must provide to the appropriate federal and state agencies a certification that the proposed activity complies with, and will be conducted consistently with, the state's coastal zone management program.

Relying upon *Town of North Hempstead v. Village of North Mills,* 482 F.Supp. 900 (E.D.N.Y.1979), DeLyser argues that the CZMA does not create jurisdiction here or in any other federal court. The court in *North Hempstead* stated that "[i]t is clear that CZMA ... is neither a jurisdictional grant, nor a basis for stating a claim upon which relief can be granted." *Id.* at 905. The court therefore dismissed a CZMA claim brought against a village by a neighboring town and several residents of the village.

In response, the State contends that it has an implied right of action under CZMA. As in its arguments regarding RHA, the State cites no direct authority for that proposition, but relies upon the four-part *Cort* analysis. The State also argues that "it acts as a quasi-federal agency entitled to enforce CZMA, as though in the stead of the U.S. Secretary of Commerce," but again cites no cases which have reached that conclusion.

■ After reviewing the statute itself, its legislative history, related regulations, and the case law, the court finds that on the facts of this case, the State has no right of action under CZMA. Although the case law suggests that an injured party may bring an action to force the federal government to fulfill its statutory obligations under CZMA, there is simply no

basis on which to infer a right of action on behalf of the State against a private party who conducts activity without a· federal permit as required by 16 U.S.C. § 1456(c)(3)(A).

The cases in which parties have been allowed to bring a claim under CZMA are generally distinguishable in that they involve alleged noncompliance with CZMA on the part of the federal government, which has clear statutory obligations under the statute. To that extent, judicial review is made available not by CZMA directly, but by the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*[4] *See, e.g., State of California v. Watt,* 683 F.2d 1253, 1270 (9th Cir.1982), *rev'd on other grounds sub nom. Secretary of the Interior v. California,* 464 U.S. 312, 104 S.Ct. 656, 78 L.Ed.2d 496 (1984); *Shanty Town Associates, Ltd. Partnership v. EPA,* 1987 WL 7745, 1987 U.S. Dist. LEXIS 5057 (D.Md. March 5, 1987); *City and County of San Francisco v. United States,* 443 F.Supp. 1116 (N.D.Cal.1977), *aff'd,* 615 F.2d 498 (9th Cir.1980).

The instant case, then, does not present the same situation as that in *Secretary of the Interior v. California,* 464 U.S. 312, 104 S.Ct. 656, 78 L.Ed.2d 496 (1984), in which the Supreme Court held that the State of California had standing to sue the Department of the Interior to enjoin land sales which allegedly violated 16 U.S.C. § 1456(c)(1). That section requires federal agencies conducting activities affecting a state's coastal zone to do so in a manner consistent with the state's coastal management plan. Again, what distinguishes the *California* case from the case at bar is that the defendant was the United States, whose alleged noncompliance with a duty imposed upon it by the CZMA resulted in direct injury to the State of California. In the instant case, on the other hand, the State has sued a private defendant, and the APA is, obviously, inapplicable.

---

4. The State has requested that, if the court finds jurisdiction to be lacking, the State be allowed to amend the complaint to add the Corps as a defendant, thereby allowing the State to maintain the action pursuant to the APA. This request will be discussed later in this decision, but is noteworthy here as indicating an implicit recognition by the State of the distinction between the instant case and those involving federal defendants.

Finding the *California* decision distinguishable, though, does not resolve whether a state can maintain an action against a private individual under CZMA. There appears to be no controlling authority on this point, and in fact the *North Hempstead* case seems to be the only reported decision which directly addresses whether a political subdivision of a state may sue a non-federal defendant under CZMA.

The State's chief argument on this issue is that it has an implied right of action under CZMA. Application of the four-part approach of *Cort v. Ash,* 422 U.S. at 78, 95 S.Ct. at 2088, however, does not support this contention.

The first consideration in the *Cort* analysis is whether the plaintiff is a member of the class for whose especial benefit the statute was enacted. Although the states figure prominently in the scheme created by CZMA, that does not necessarily make them especial beneficiaries of the Act. The purpose of CZMA is essentially to ensure the wise use of the nation's coastal zone. 16 U.S.C. § 1452. To that end, Congress has sought through CZMA to encourage and assist the states in developing appropriate management programs. 16 U.S.C. §§ 1451(i), 1452(2).

The apparent reason for this encouragement and assistance, though, is not that Congress meant the states especially to benefit from the Act, but because Congress believed that a unified, effective approach to protecting and using the coastal zone required the states' participation in the development of coastal zone management policies. 16 U.S.C. § 1451(i).

Rather than being especial beneficiaries of CZMA, then, the states, in Congress's view, have a particular part to play in the attainment of a national policy. Thus, the Act speaks in terms of encouraging and assisting "the states to exercise effectively their responsibilities in the coastal zone ..." 16 U.S.C. § 1452(2).

It is true that CZMA is intended "to enhance state authority" over their coastal zones. Sen.Rep. No. 753, 92nd Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Ad.News 4776. That purpose, however,

cannot be considered in a vacuum. The important question is *why* Congress intended that result, and analysis of CZMA makes it apparent that Congress saw enhancement of state authority not as an end in itself, but as a means of ensuring more uniform and effective management of the coastal zone.

Significantly, Congress found that prior to enactment of CZMA, the states' efforts at management of the coastal zone had been inadequate. 16 U.S.C. § 1451(h). Nevertheless, Congress did not wish to preempt what traditionally has been a matter of state authority. *Id.* To balance these concerns, CZMA stresses that the states are to be encouraged to develop plans in cooperation with federal and local governments and other vitally affected interests, including interstate and regional agencies. 16 U.S.C. §§ 1451(i), 1452(4). *See Secretary of the Interior v. California,* 464 U.S. at 316, 104 S.Ct. at 658 (CZMA was designed "to encourage broad participation" in developing coastal zone management programs).

The interests to be served by CZMA, then, are not peculiar to the states, but are shared by all levels of government and society. The statute repeatedly speaks in terms of the "national interest" in prudently managing the coastal zone, 16 U.S.C. § 1451(a), of the zone's "value to the present and future well-being of the Nation," § 1451(b), of "the well-being of all citizens," § 1451(e), and of the "national objective of attaining a greater degree of energy self-sufficiency," § 1451(j). These phrases do not suggest an intent to benefit any particular class, but to promote the interests of all.

Therefore, while the states have a special role to play, they are not free to do as they please if they wish to receive grants or other benefits under the Act. State management plans must receive federal approval from the Secretary of Commerce, and that approval can only be given if the state plan adequately considers the "national interest" and "the views of Federal agencies principally affected by such program." 16 U.S.C. §§ 1455(c)(8), 1456(b);

*California*, 464 U.S. at 316, 104 S.Ct. at 658. In addition, the Secretary of Commerce may grant a permit for activity affecting a state's coastal zone notwithstanding the state's objections to the activity, if the Secretary finds that the proposed activity is consistent with the objectives of CZMA or is necessary to national security. 16 U.S.C. § 1456(c)(3)(A). In light of all these facts, therefore, the court finds that the states are not especial beneficiaries of CZMA.

The second prong of the *Cort* analysis is whether there is any indication of a legislative intent to create or deny a private remedy. This question, too, must be answered in the negative. Although § 1456 states that a permit applicant must provide both the appropriate federal and state agencies with a consistency certification, it is ultimately up to the Secretary of Commerce, not the state, to grant or deny the application. 16 U.S.C. § 1456(c)(3)(A).

The statute is silent on the issue of enforcement of the Secretary's decisions. In the absence of statutory language indicating otherwise, it would certainly seem to be for the Secretary to decide whether to enforce a permit denial. There is simply no mechanism provided by CZMA by which a state may seek judicial enforcement of the Secretary's decision. As the Supreme Court stated with respect to RHA in *Sierra Club*, "[t]he federal judiciary will not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide." 451 U.S. at 297, 101 S.Ct. at 1781.

For these reasons, the court finds that the State does not have an implied right of action under CZMA. The Supreme Court stated in *Sierra Club* that the third and fourth *Cort* factors "are only of relevance if the first two factors give indication of congressional intent to create the remedy." *Id.* at 298, 101 S.Ct. at 1781. Since there is no such indication in the case at bar, it is unnecessary to consider those factors, and the State's fourth cause of action is therefore dismissed.

### 3. Federal Question Jurisdiction Under the Public Trust Doctrine

The State argues that there is federal question jurisdiction under 28 U.S.C. § 1331(a) because the complaint alleges violations of the "federal common law public trust doctrine." According to the State, the public trust doctrine vests the state and federal governments with title to navigable waters in trust for the people, and establishes the public's right to use those waters, shorelands, and submerged lands. The State maintains that this case involves a federal question because of its claim that DeLyser has trespassed upon lands held in trust by New York State.

A similar argument was presented in *State of Wisconsin v. Baker*, 698 F.2d 1323 (5th Cir.1983), *cert. denied*, 463 U.S. 1207, 103 S.Ct. 3537, 77 L.Ed.2d 1388 (1983), in which a state sought a declaratory judgment that fishing and hunting restrictions set up by the Chippewa Indians on their reservation infringed upon the general public's right to use navigable state waters. Wisconsin asserted property interests in its lakes and lakebeds as trustee for the public, and argued that its claim that the defendants were infringing those interests arose under federal law.

The Fifth Circuit Court of Appeals disagreed, stating that a suit to enforce a right of property that was at one time governed by federal law or was first conveyed by the United States does not "arise under" federal law, unless federal law continues to govern the right, or if the suit is to decide whether the United States did, in fact, originally convey the right. *Id.* at 1327. The court held that Wisconsin's claim did not arise under federal law, since federal law did not continue to govern property rights in the beds and waters of navigable Wisconsin lakes. Stating that the "grant of statehood to Wisconsin was a grant both of property rights and of sovereign power," the court said that whether the state retained in trust for the public the same title and rights to lake beds that it acquired upon becoming a state was "entirely a matter of Wisconsin law, subject only to the exercise by the United States of one of its

constitutional powers." *Id.* The court therefore held that the state's public trust claim did not confer federal question jurisdiction.[5]

I find the reasoning of *Baker* persuasive, and hold that the State's claims relating to the public trust doctrine do not "arise under" federal law. The Supreme Court stated in *Montana v. United States,* 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981), that the federal government holds lands under navigable waters in trust for future states, to be granted to such states when they enter the Union. *Id.* at 551, 101 S.Ct. at 1251. The Court however added that "[a]fter a State enters the Union, title to the land is governed by state law," and that the state's power over submerged lands is subject only to "the paramount power of the United States to ensure that such waters remain free to interstate and foreign commerce." *Id.*

It is clear, then, that federal question jurisdiction in the instant case cannot be premised upon the federal public trust doctrine. The *Montana* decision makes plain that the State's power over these waters is not conferred by federal law, but exists by virtue of the state's sovereign status. All control over the land, except for the power to ensure freedom of commerce, has been retained by the State,[6] and that control has not been circumscribed by federal common law.

The decision in *Illinois Central R.R. Co. v. Illinois,* 146 U.S. 387, 13 S.Ct. 110, 36 L.Ed. 1018 (1892), relied upon by the State, is not to the contrary. That case dealt with whether a state could transfer to a railroad title to lands under the navigable waters of Lake Michigan. The Court held that those lands were held in trust for the people of Illinois, and accordingly could not be transferred to a private party. The Court's holding, however, was entirely consonant with *Baker* and *Montana.* In essence, the Court stated that when Illinois became a state, it obtained full control over lands beneath its navigable waters. *Id.* at 434–35, 13 S.Ct. at 110–11. Since that control was a necessary incident of sovereignty, the state legislature simply had no power to abdicate it. *Id.* at 453, 13 S.Ct. at 118.

The *Illinois Central* case, then, involved a fundamental issue of federal law concerning the nature of a state's sovereignty, and the powers assumed by a state upon its admission to the Union. In effect, the Court reached the same conclusion as that reached in the *Baker* and *Montana* decisions: that a state has full control over its own navigable waters. The Court in *Illinois Central* simply held that a state cannot relinquish that control to a private party. That is far different from holding that a state has a federal remedy when it wishes to exercise that control as against a private landowner.

Of course, New York State may have an obligation under its own law to hold the lands in trust for its public, but that does not give rise to federal question jurisdiction. As in *Baker,* the State's rights and duties with respect to these lands are governed purely by state law, and the claims based on the public trust doctrine therefore do not "arise under" federal law within the meaning of 28 U.S.C. § 1331(a).

### 4. Federal Common Law of Public Nuisance

■ The State also argues that federal question jurisdiction exists under 28 U.S.C.

---

**5.** The court did find that federal question jurisdiction existed based on Wisconsin's claim that the Chippewas had no right under the 1854 treaty which created their reservation to regulate public hunting and fishing in navigable lakes. The court noted, however, that that claim, unlike the public trust claim, involved the state's direct reliance upon a federal treaty to defeat a federal right, *i.e.,* the right to prevent the public from fishing and hunting in navigable lakes. Thus, the court's ultimate finding of jurisdiction is inapposite to the case at bar.

**6.** Since the *Montana* case involved a state which had been carved out of a territory, the Court spoke of the United States *conveying* title to the state when it entered the Union. Because New York is one of the original thirteen states, however, it retained, rather than received, power over its lands, except to the extent that it ceded any powers to the federal government through the Constitution. U.S. Const. amend. X. This factual distinction, however, makes *Montana* no less applicable to the case at bar.

§ 1331(a) based on the federal common law of public nuisance. The State relies upon *Illinois v. City of Milwaukee*, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972), in which the Supreme Court held that Illinois had stated a cause of action under federal common law based on Illinois's claim that water pollution created by several Wisconsin cities had created a public nuisance.

The court agrees with the State that federal common law, when it exists, may give rise to federal question jurisdiction. As noted in the discussion of RHA, however, *supra,* the Supreme Court stated in *Sierra Club* that RHA was enacted in response to the holding in *Willamette Iron Bridge Co. v. Hatch*, 125 U.S. 1, 8 S.Ct. 811, 31 L.Ed. 629 (1888), that there was *no* federal common law of nuisance with regard to obstructions to navigation. *Sierra Club*, 451 U.S. at 295, 101 S.Ct. at 1780.

The State's reliance on *Illinois v. City of Milwaukee* is therefore misplaced. Though that case did involve a federal common law nuisance claim, the nuisance at issue in *Illinois* was water pollution, as to which there is a federal common law of nuisance. The case at bar thus stands in contrast to *Illinois* and other cases involving pollution, since it deals with an obstruction to navigation. Such nuisances are not governed by federal common law, but by federal statute.

In addition, to the extent that the State's nuisance claim rests on acts by DeLyser other than obstruction of navigation, this cause of action falls within areas governed by state law. Most of the allegations in the nuisance claim relate to the rights of the people of New York to enjoy the use of waters which the State claims to hold in trust for its people. As is explained in the preceding discussion of the public trust doctrine, these are matters solely covered by state law, and thus this claim does not "arise under" federal law.

### 5. Plaintiff's Request for Leave to Add the Corps of Engineers

■ The State has requested that if the court finds that it lacks jurisdiction, the State be allowed to add the Corps as a defendant, based on the Corps' alleged failure to fulfill its obligations to enforce the provisions of RHA and CZMA which DeLyser allegedly violated.

The State's request is denied. It is apparent that the State could not assert a valid claim against the Corps, since the Corps' decision not to enforce the denial of DeLyser's permit application is not subject to judicial review.

The State's contention in its brief that adding the Corps "will confer clear federal subject matter jurisdiction" under the Administrative Procedure Act is clearly in error. The Supreme Court held in *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), that the APA grants neither an explicit nor an implied grant of subject-matter jurisdiction to review agency actions. *Id.* at 107, 97 S.Ct. at 985. In the absence of an independent jurisdictional ground, therefore, the State cannot obtain jurisdiction through the APA.

Moreover, in *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), the Supreme Court stated that an "agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Id.* at 831, 105 S.Ct. at 1655. The Court set forth the general rule that an "agency's decision not to take enforcement actions should be presumed immune from judicial review under § 701(a)(2)." *Id.* at 832, 105 S.Ct. at 1656. The Court added "that the decision is only presumptively unreviewable; the presumption may be rebutted where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers." *Id.* at 832–33, 105 S.Ct. at 1656–57 (footnote omitted).

Not only does CZMA not provide guidelines for enforcement of permit application decisions; the statute does not discuss enforcement at all. Section 1456(c)(3)(A) deals with an applicant's obligation to provide a consistency certification for proposed activity, and with the circumstances under which the Secretary may approve or disapprove an application. Nowhere does

CZMA discuss enforcement of the Secretary's decision on an application.

 The same is true of enforcement of RHA. Although the statute enables the Secretary of the Army to enforce permit decisions, it in no way imposes an obligation on him to do so in particular cases,[7] nor does it provide guidelines for enforcement. *See Harmon Cove Condominium Ass'n, Inc. v. Marsh*, 815 F.2d 949, 952 (3d Cir.1987) (Secretary's decision whether to compel compliance with conditions of permit issued pursuant to RHA is "classic example" of unreviewable enforcement decision as described in *Chaney*).

The Corps' decision not to take any steps to enforce its denial of DeLyser's application is thus plainly beyond judicial review. It would therefore be fruitless to allow the State to add the Corps as a defendant.

## SUMMARY AND CONCLUSION

It appears, therefore, that the State has failed to establish federal subject-matter jurisdiction over any of its claims. The causes of action based on the federal grounds asserted must therefore be dismissed. In addition, without an independent basis for federal jurisdiction, I decline to exercise jurisdiction over the pendent state law claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Albany Ins. Co. v. Esses*, 831 F.2d 41, 45 (2d Cir.1987).

It should be pointed out that the court's holding does not necessarily mean that the State lacks a remedy; it simply means that the State has no *federal* remedy. As is made clear in this opinion, the State has full control over navigable waters within its boundaries, subject only to Congress' power to regulate interstate commerce. There is no apparent reason, therefore, why the State cannot seek a remedy in its own courts. *See, e.g., Cummings v. City of Chicago*, 188 U.S. 410, 23 S.Ct. 472, 47 L.Ed. 525 (1903) (RHA does not supersede

authority of a state under its own law to prohibit unauthorized erection of a structure in a navigable river within state's borders).

For the foregoing reasons, then, it is hereby

ORDERED, that defendant's motion to dismiss is granted, and the complaint dismissed in its entirety.

IT IS SO ORDERED.

---

**7.** Contrary to the State's interpretation, the court reads the statement in 33 U.S.C. § 413 that the "Department of Justice shall conduct the legal proceedings necessary to enforce" § 403 not as mandating enforcement in every instance, but rather as simply designating which federal agency is to undertake the legal proceedings once the decision has been made to seek enforcement.